86 N.J. Super. 206 (1965)
206 A.2d 585
BERTRAM I. COHEN AND HELENE COHEN, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
FAIR LAWN DAIRIES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, FARMLAND-FAIR LAWN DAIRIES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS, AND BOROUGH OF FAIR LAWN, A MUNICIPAL CORPORATION, AND NICHOLAS W. POSTMA, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1964.
Decided January 18, 1965.
*208 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. James A. Major argued the cause for appellants (Messrs. Major & Major, attorneys).
Mr. Seymour Cohen argued the cause for respondents.
The opinion of the court was delivered by CONFORD, S.J.A.D.
The principal question here is whether a party to a written agreement may bind himself, by express stipulation therein, to liability to the other for the reasonable legal expense of maintaining an action for breach of the agreement as part of the recoverable damages in the event of such breach. We decide that question in the affirmative.
Early in 1954 plaintiffs and other homeowners in the Borough of Fair Lawn brought an action to enjoin the defendant corporations from erecting certain buildings and from conducting certain commercial operations on their premises as allegedly in violation of the local zoning ordinance and as constituting a nuisance. Defendants countered with an action against plaintiffs and the others for malicious prosecution and abuse of process. The litigation was "settled" by the parties' *209 entry on June 10, 1954 into the agreement which is the subject of the present action. Under that agreement plaintiffs would withdraw objections to a pending application by defendants for a variance from the zoning ordinance and defendants would refrain from violation of the ordinance, would make no other applications for variances, and would take certain specific steps in regard to the operation of their business and as to certain physical appurtenances on their property, all to the apparent end of reducing the harmful effect of defendants' business on plaintiffs' enjoyment of their homes as residences.
Paragraph 21 of the agreement was as follows:
"21. It is agreed between the parties that if the parties of the first part shall be successful in any suit for damages for breach of this agreement or to enforce this agreement or to enjoin the Fair Lawn Dairies and/or Farmland-Fair Lawn from violating this agreement, the parties of the first part shall be entitled to recover as part of their damages their reasonable counsel fees for bringing and maintaining any such action. In the event that the parties of the first part shall be unsuccessful in such a suit for the violation of this agreement, the Fair Lawn Dairies and/or Farmland-Fair Lawn Dairies shall be entitled to recover as part of their damages from the parties of the first part their reasonable counsel fees in defending any such action."
In May 1962 plaintiffs brought the present action alleging violation by defendants of the 1954 agreement in a considerable number of particulars. The complaint sought specific performance, injunctive relief and damages. In the course of the proceedings plaintiffs waived money damages (aside from the claim for "counsel fees") but pressed for an injunction. After trial, the court partly granted and partly denied the relief sought. Subsequently, on motion, supported only by an affidavit by counsel as to services rendered, the court awarded plaintiff a "counsel fee" of $6,000, determined in the judgment to be "reasonable," and stated to be granted pursuant to the agreement. On the hearing of the motion defendants interposed no objection, merely requesting that the allowance be "reasonable."
*210 Represented on this appeal by different counsel, defendants now urge: (1) the agreement of the parties in respect of fee is invalid because in contravention of the rules of court governing counsel fees; alternatively, (2) the reasonableness of the fee was not established at a hearing and the amount allowed was excessive.

I.
Plaintiffs urge, preliminarily, that the repudiation by defendants of the agreement respecting fees for invalidity should not be entertained on appeal because it was not urged below. We regard this problem, however, as within the exception to the rule invoked which concerns issues involving matters of public policy. The subject matter of defendants' contention does involve an important problem in that area as well as in the sphere of administration of litigation which ought to be settled by the courts.

II.
The gravamen of defendants' argument is that since "counsel fees" are within the exclusive governance of rules of court promulgated by the Supreme Court, and since the present rule on the subject, R.R. 4:55-7, makes no provision for a counsel fee in a case of this kind, the allowance here made by the trial court was necessarily beyond its authority. Reliance is had upon such cases as State v. Otis Elevator Co., 12 N.J. 1 (1953), and Bank of Commerce v. Markakos, 22 N.J. 428 (1956). The former decision held that counsel fees were a matter of practice and procedure rather than substance, and therefore exclusively within the rule-making jurisdiction of the Supreme Court, as a corollary of Winberry v. Salisbury, 5 N.J. 240 (1950). It is at once apparent, however, that Otis Elevator Co. and cases of similar import do not undertake to deal with the specific question presented to us  whether the freedom to contract includes the right to bind oneself to payment as damages on one's breach of contract of the other party's reasonable legal *211 expenses necessarily incurred in maintaining an action to redress the breach.
In Bank of Commerce v. Markakos, supra, the court came closer to the matter at hand. It refused enforcement of a stipulation in a mortgage bond for payment by the obligor in the event of foreclosure of an attorney's fee of 3% of the principal sum (but not less than $75) in the face of the provision in the court rule permitting a fee of only 2% of the sum adjudged to be paid the plaintiff in foreclosure, up to $5000, and smaller percentages on larger amounts adjudged due. This court on two occasions since has given Markakos a reading confining its authority to the precise fact situation there presented  i.e., the marked variation between the contract and the rule of court in relation to the identical subject matter  the attorney's percentage allowance on foreclosure of a mortgage. Maryland Credit Finance Corp. v. Reeves, 45 N.J. Super. 205, 208 (App. Div. 1957) (per Judge, now Mr. Justice, Francis); Bancredit, Inc. v. Bethea, 65 N.J. Super. 538, 553 (App. Div. 1961).
In the Reeves case, supra, the court sustained an award of a 15% attorney's fee based upon a provision in a conditional sales contract allowing the seller to deduct from the proceeds of the resale upon default the expenses thereof, "including a reasonable attorney's fee." The court pointed to the statutory authorization of such a fee, not to exceed 15%, in retail installment contracts (N.J.S.A. 17:16B-6; since repealed, L. 1960, c. 40, § 58, and replaced by a limitation of 20% on the first $500 and 10% on the excess. N.J.S.A. 17:16C-42(b)). The court said, in relation to the Markakos case, supra: "A different situation is presented here and we do not believe the ruling should be extended by this Division beyond the boundaries of that case." (45 N.J. Super., at p. 208).
In Bancredit, Inc. v. Bethea, supra, we enforced an express provision in an installment contract promissory note for payment by the purchaser of a 15% attorney's fee on default, relying on Reeves for its distinction of the rule in *212 Markakos. We there also permitted the statutory assessment of costs of 5% "fee to the attorney of the prevailing party," N.J.S. 22A:2-42, to be computed on the whole liability inclusive of the contractual 15% attorney's fee allowance.
See also First Savings & Loan Ass'n of Jersey City v. Heldman, 79 N.J. Super. 65 (Cty. Ct. 1963); Gramatan Nat. Bank, etc., of Bronxville v. Backman, 30 N.J. Super. 349 (App. Div. 1954), both enforcing provisions in promissory notes for assessment of attorney's fees on collection, independent of statutory authorization.
The weight of authority throughout the country sustains the validity and enforceability of reasonable provisions for payment by the obligor, in event of default, of a percentage of a promissory note or other instrument evidencing an indebtedness to cover the creditor's attorney's fees. Annotations, 17 A.L.R.2d 288 (1951) and 63 A.L.R. 1314 (1929); 15 Am. Jur., Damages, § 143, pp. 551-52.
It is the general rule that in the absence of statute, rule of court or contract one may not recover his legal expenses, whether for compensation of attorneys or otherwise, as damages for breach of contract, in an action for such breach. Textileather Corp. v. American, etc., Ins. Co., 110 N.J.L. 483, 485-486 (E. & A. 1933); Liebeskind v. Metal Frame Aquarium Co., 58 N.J. Super. 504 (App. Div. 1959), certification denied 32 N.J. 354 (1960); Koller v. Sabo & Rhodes, Inc., 64 N.J. Super. 324 (App. Div. 1960), certification denied 34 N.J. 465 (1961). The rationale of the general rule is "to ensure that access to the courts be not effectively denied those of moderate means." Farmer v. Arabian American Oil Company, 324 F.2d 359, 365 (2 Cir. 1963), dissenting opinion, quoted in the concurring opinion of Mr. Justice Goldberg on the appeal, wherein reversal resulted. 85 S.Ct. 411, 13 L.Ed.2d 248, 255 (1964). Distinguish the allowance of damages for the expense of counsel incurred in an action against a third person foreseeably resulting from a breach of contract by the defendant. Verhagen v. Platt, 1 N.J. 85, 91 (1948).
*213 It was plainly implied by the Court of Errors and Appeals in Textileather Corp. v. American, etc., Ins. Co., supra, that it would recognize and enforce a contractual provision obligating a defendant for the suing party's legal expenses when seeking redress for breach of the agreement, when it said:
"Our conclusion is that the successful party to an action at law is not entitled to visit upon the defeated party the costs and expenses of the litigation except as the defeated party is bound by his contract or as the statutes of the state provide. Finding that there is no pertinent provision in the contract and that there is no authorizing statute, we conclude that the plaintiff is not entitled to recover * * *." (110 N.J.L., at p. 488; emphasis ours)
Recognition of the exception for an express contractual undertaking to pay legal expenses as part of the aggrieved parties' damages is also to be found in the dissenting opinion of Mr. Justice Heher in State v. Otis Elevator Co., supra (12 N.J., at p. 35) and in Jersey City, etc., Authority v. Housing, etc., Jersey City, 70 N.J. Super. 576, 584 (Law Div. 1961), affirmed 40 N.J. 145 (1963). And while some of the authorities cited above concerning agreements for attorney's fees in suits on notes and other evidences of debt on a percentage basis indicate reservations and even hostility to such provisions,[1] there is near unanimity of approval of provisions in more general types of contracts for reimbursement of the suing party, as part of his damages on breach, for his reasonable legal expenses, including attorneys or "counsel" fees. Illustrative cases allowing such recovery are: Manchester Gardens v. Great West Life Assur. Co., 92 U.S. App. D.C. 320, 205 F.2d 872 (D.C. Cir. 1953); United States v. Standard Oil Co., 156 F.2d 312 (9 Cir. 1946); Dunlap v. National Bank of Commerce of Seattle, 27 Wash.2d 229, 177 P.2d 711 (Sup. Ct. 1947); Slim Olson, Inc. *214 v. Winegar, 122 Utah 80, 246 P.2d 608 (Sup. Ct. 1952); Ronlee, Inc. v. P.M. Walker Co., 129 So.2d 175 (Fla. D. Ct. App. 1961); South Carolina Finance Corp., etc. v. West Side Finance Co., 236 S.C. 109, 113 S.E.2d 329 (Sup. Ct. 1960); Loeb v. Rabin, 146 So.2d 487 (La. Ct. App. 1962); Gross v. Breaux, 144 So.2d 763 (La. Ct. App. 1962); Airways Supermarkets v. Santone, 107 N.Y.S.2d 187 (Sup. Ct. 1951), affirmed without opinion 280 App. Div. 924, 116 N.Y.S.2d 128 (App. Div. 1952). And see 17 Am. Jur.2d, Contracts, § 164, pp. 517 et seq.; 14 Am. Jur., Costs, § 70, p. 45; 15 Am. Jur., Damages, § 143, pp. 551-52; 25 C.J.S. Damages § 50, at p. 533; Guay v. Brotherhood Bldg. Ass'n, 87 N.H. 216, 177 A. 409, 413, 97 A.L.R. 1053 (Sup. Ct. 1935); New Park Mining Co. v. United Steelworkers of America, 288 F.2d 225, 228 (10 Cir. 1961); Viner v. Untrecht, 26 Cal.2d 261, 158 P.2d 3, 9 (Sup. Ct. 1945); cf. Security Insurance Company of New Haven v. White, 236 F.2d 215, 220 (10 Cir. 1956); Standard Accident Ins. Co. of Detroit, Mich. v. Hull, 91 F. Supp. 65, 66-67 (S.D. Cal. 1950).
In the light of the general validity of such provisions in most jurisdictions we see no sound reason why this State should not also, as intimated by Mr. Justice Case for the Court of Errors and Appeals in the Textileather case, supra, sustain an agreement negotiated at arms' length between parties of presumably equal bargaining power, that if one of them is forced to sue to redress a breach of their contract by the other, he shall have recovery by way of damages for the reasonable expense he is thus put to for legal counsel in the same manner that the law allows him recovery of his other losses fairly attributable to the breach. The agreement in the present case is especially fair in that it allows a defendant successfully defending an action for breach of the contract a reciprocal right to recover his reasonable legal outlay from the plaintiff.
In our judgment, no violation of the letter or spirit of the rules of court governing counsel fees is involved in the *215 enforcement of such a contractual provision as concerns us here. It is well known that the policy behind the promulgation in 1948 of what is now R.R. 4:55-7 (headed "Counsel Fees") was the elimination of the broad general powers of the former Chancery Court judges to award discretionary counsel fees  powers which in practice had been attended by "serious abuses" familiar to all who practiced in the former Court of Chancery. See the dissenting opinion of Mr. Justice Jacobs in State v. Otis Elevator Co., supra (12 N.J., at p. 27). What was thus eliminated, except for the few special categories of situations in which such fees were continued to be allowed, was the judicial power of imposition against parties of assessments of adversarial counsel fees in invitum. The matter of voluntary agreement, by stipulation incorporated into a contract in advance, to indemnify a prevailing suitor for his legal expenses in vindicating his rights under the agreement, was certainly not in the minds of those who promulgated the rules of court relative to counsel fees as an evil to be curbed thereby.
Moreover, the award of a "counsel fee," as such, is a discretionary act, which, when exercised, need not necessarily be guided solely by the value of the legal services performed. Under an agreement, on the other hand, the remedy is one of damages, to be assessed by verdict of the finder of fact as a matter of right, and in the actual amount of damages established by the proofs.
Thus, when a court enforces an agreement of the kind under consideration and awards what it finds to be the actual, reasonable and necessary expense of the aggrieved party in maintaining the action as part of his general damages, it is not allowing a "counsel fee," at least not in the sense intended and contemplated by the rules of court. It is merely adjudicating damages for breach of contract, albeit including therein an item which, as a matter of public policy entirely apart from the rules of court, would not be compensable were it not for the voluntary advance agreement of the parties that it should be so compensable as part of the general damages. *216 That agreement itself is not against public policy unless a statute, rule of court or judicial determination declares it so to be. We know of no such declaration in this State applicable to an agreement of the kind now before us, and, as indicated above, we see no reason in justice or sound policy to withhold enforcement thereof in the circumstances presented.

III.
It remains to consider whether the agreement of the parties was properly carried into effect in the present instance. We find that it was not, but the fault here is not attributable to the trial court but rather to defendants, who did not afford that court or the plaintiffs the benefit of their present contention that plaintiffs should prove the fact and amount of their actual and reasonable expenses for legal representation.
Since we are here vindicating a contractual agreement for ascertainment of damages, not approving the award of a "counsel fee," we cannot approve the trial procedure here, which, in effect, was that employed in the award of a counsel fee. Plaintiffs must prove their damages in respect of the obligation for legal expenses in the same manner as they would any other item of damages. There must be plenary proof, not merely by ex parte affidavit, of the actual services necessarily rendered in the prosecution of the action, and of the reasonable value thereof, in the same manner as an attorney proves his case against a client for services rendered in quantum meruit. What is to be determined is, at most (see below), what plaintiffs reasonably owe and expect to pay their attorney for maintaining this action. Defendants may submit counter-proof as in any other issue over damages.
We are impressed, moreover, with the qualifications expressed by the United States Court of Appeals for the District of Columbia in applying the rule we follow here, in Manchester Gardens v. Great West Life Assur. Co., supra. The court said:
"Similarly, where the merit or necessity of the creditor's claim or defense is successfully challenged, courts may decline to enforce *217 attorney's fee provisions. When contractual provisions for payment by a debtor of his creditor's attorney's fees and costs are invoked, such payment should not be enforced in the full amount of the creditor's legal expenses (even though actually incurred, and reasonable in amount) where his claims or defenses giving rise to such expenses lack substantial merit. In no event should the sum allowed be so large as to amount to an undue penalty for taking one's grievance to the courts. And if the creditor has benefitted [sic] by having a doubtful question of law resolved, thus reducing the area of potential future dispute, the debtor should bear only a fair portion of the burden." (205 F.2d, at p. 878)
In that regard, we observe from the opinion of the trial court on the merits that several of the requests for relief by plaintiffs were rejected as unjustified. The court should therefore give consideration to whether, in the light of the views expressed in the Manchester Gardens case, supra, an award to plaintiffs of what would otherwise be the reasonable legal expense involved should not be scaled down to reflect the circumstance that the attorney's efforts were here expended in part in warrantless claims.
Reversed and remanded for further proceedings conformably with this opinion. No costs on this appeal.
NOTES
[1] Generally out of concern for the unequal bargaining position of the parties and the possibilities of overreaching by the holders of such obligations. See Annotation, 17 A.L.R.2d, op. cit., supra, at pp. 314-316.